UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CRAIG PERSIN and VALERIE LANDIS, on behalf of themselves and all other persons similarly situated, known and unknown, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | 05 C 2347 |
| CAREERBUILDER, LLC d/b/a CAREERBUILDER.COM, | ) ) ) ) | |
| Defendant. | ) | |

# MEMORANDUM OPINION

CHARLES P. KOCORAS, Chief District Judge:

This matter comes before the court on Plaintiff Craig Persin's renewed motion for an order to authorize notice. As set forth in detail below, we authorize notice to issue, but we deny the remainder of Persin's request.

## BACKGROUND

Defendant CareerBuilder.com ("CareerBuilder") hired Persin on November 4, 2002, as a sales account manager and promoted him to senior account manager before terminating his employment on February 18, 2005. Persin claims that before, during, and after his tenure with CareerBuilder, CareerBuilder eschewed its duty under the Fair

Labor Standards Act ("FLSA") to pay him and other account managers for hours they worked in excess of 40 in a given workweek. On April 14, 2005, Persin filed a complaint for unpaid wages and other relief under the FLSA, 29 U.S.C. § 201, et seq., and the Illinois Minimum Wage Law, 820 ILCS 105/1 et seq., on behalf of himself and similarly situated employees.

On July 15, Persin moved to authorize notice to putative coplaintiffs pursuant to 29 U.S.C. § 216(b). This section of the FLSA allows employees who are similarly situated to file a collective action in response to their employer's alleged violations of the FLSA. In his motion, Persin alleged that he and other account managers at CareerBuilder were similarly situated by virtue of sharing similar job titles and duties that involved "inside sales." Persin wished to send court-authorized notice of the lawsuit to all persons employed by CareerBuilder between September 21, 2002, and November 15, 2004, who held the position of account manager or performed substantially similar duties. He also sought an order that CareerBuilder provide him with the contact information of similarly situated employees and our approval of his proposed notice and consent form. On September 21, we denied Persin's motion to authorize notice due to a paucity of allegations that he and other CareerBuilder employees were similarly situated.

On October 11, Persin and Valerie Landis, a newly named plaintiff and former CareerBuilder employee, moved for leave to file a Second Amended Complaint. In it, Persin and Landis added a new allegation that CareerBuilder violated the FLSA and Illinois state law after CareerBuilder reclassified their jobs as non-exempt under the FLSA in November 2004. They also sought to pursue the lawsuit as a collective action not only on behalf of all "account managers" but also "account representatives."

On the same day, Persin also filed the request now before us. He asks that the court take one of three paths: (1) authorize notice based on the legal standard that he previously argued was appropriate; (2) authorize notice based on the legal standard articulated in our prior opinion; or (3) certify the question of the legal standard for court-authorized notice to the Seventh Circuit under 28 U.S.C. § 1292(b).

## LEGAL STANDARD

The legal standard for court-authorized notice under 29 U.S.C. § 216(b) was fully described in our prior opinion. Persin v. CareerBuilders, LLC, No. 05-2347, slip op. at 3-5 (N.D. Ill. Sept. 21, 2005). For clarity, we now summarize a few key concepts. The Seventh Circuit has not articulated a standard to regulate a plaintiff's communication with other putative claimants via notice of the lawsuit, other than indicating that a district court may not forbid a plaintiff from sending notice altogether. See Woods v. New York Life Ins. Co., 686 F.2d 578, 580 (7th Cir. 2004). In deciding

whether to authorize a plaintiff's proposed notice, courts in other circuits have employed an inquiry that occurs at two points in the litigation. See, e.g., Hipp v. Liberty National Life Ins., 252 F.3d 1208, 1219 (11th Cir. 2001); Mooney v. Aramco Servs. Co., 54 F.3d 1207, 1213-14 (5th Cir. 1995). In the first stage, the court leniently reviews pleadings and affidavits to determine whether there are allegations sufficient for the court to envision a scenario where the representative plaintiff and putative claimants are "similarly situated." Id.; Grayson v. KMart Corp., 79 F.3d 1086, 1097 (11th Cir. 1996). This inquiry typically results in a "conditional certification" of the representative collective action. Mooney, 54 F.3d at 1214. If the allegations pass muster, the court may authorize the plaintiff's notice of the lawsuit to potential claimants. Hipp, 252 F.3d at 1218. Assuming the notice is sent, it is not until potential plaintiffs have been given a chance to "opt in" to the collective action and discovery is complete that the court more rigorously reviews whether the representative plaintiff and the putative claimants are in fact similarly situated so that the lawsuit may proceed as a collective action. See Thiessen v. Gen. Elec. Capital Corp., 267 F.3d 1095, 1102-03 (10th Cir. 2001). With these principles in mind, we turn to the motion before us.

## DISCUSSION

**A. Request to Authorize Notice**

Persin's motion focuses primarily on his renewed request to authorize notice, which will also be the main issue treated in this opinion. However, some of his other points deserve passing mention. He frames his argument in the following way: the standard we have concluded should apply to this case is incorrect, but he can now make a sufficient factual showing to satisfy what he perceives to be the greater burden that we have placed upon him. Should we disagree with both of these positions, he requests that we ask the Court of Appeals to weigh in with an interlocutory appeal via 28 U.S.C. § 1292(b). This statutory section allows an exception from the usual requirement that an appeal only be taken from a final decision of the district court when the judge concludes that the order in question involves "a controlling question of law as to which there is substantial ground for difference of opinion and . . . an immediate appeal . . . may materially advance the ultimate termination of the litigation."

Persin's arguments potentially bear out only on the third point; he has demonstrated that there is no general consensus within the Northern District of Illinois on how precisely to determine whether parties are similarly situated. However, he assumes that the disconnect results from different legal standards rather than different factual situations, which is less than a foregone conclusion. While this state of affairs

is undoubtedly frustrating, that frustration does not trump all of the other considerations that play into the rule that, with very limited exceptions, only final decisions are appealable. 28 U.S.C. § 1291.

On the remainder of the requirements, his presentation comes up short. On the first point, the issue Persin presents does not involve a question of law. The words "similarly situated" do not equate to "subject to a common policy or plan." Though the existence of a common policy or plan can clearly have an impact on whether all members of a particular group are similarly situated, it is not the alpha and omega of that determination. Moreover, the question he asks materially advances his ability to draw from the largest pool of potential plaintiffs; it does little to advance the ultimate termination of the litigation. As a result, even if we ultimately decided that Persin had again failed to provide a basis for us to decide whether others may have been similarly situated to him, we would not certify this question to the appellate court. If this case should result in a final decision that implicates the scenario of which Persin complains, he can get his appellate review like any other litigant, but we will not accelerate the process and disregard the good reasons for the rules set out in 28 U.S.C. §§ 1291 and 1292.

Persin also requests that the statute of limitations be tolled to erase the time that has elapsed since his first motion was denied. The days that have ticked by have done

so for no reason other than that the initial showing was insufficient to warrant the relief requested. That is no basis to forestall any limitations period. Consequently, the request to toll is denied.

We thus turn our attention to the main question: whether Persin's newly provided support is sufficient to demonstrate that other CareerBuilder employees are similarly situated to him. In his original motion, Persin submitted only his own job title, "account manager," and a statement that account managers are "inside sales personnel" in support of the contention that he and other employees at CareerBuilder were similarly situated. No description of his job duties and no recitation of knowledge that others in the company performed duties similar to his were provided. We held that even under the lenient standard of the conditional certification of a collective action, this was not enough of a basis that he and other account managers shared some fundamental characteristics that would make them similarly situated. Persin, No. 05-2347, slip op. at 6. Accordingly, we declined to authorize his proposed notice. Id.

However, in his renewed motion to authorize notice, Persin has included new allegations that offer meaningful points of comparison. First, Persin has shed light on his original statement that his job involved "inside sales." He explains that his principal duty was to sell help-wanted advertisements on CareerBuilder's website and

in its affiliated newspaper. He was responsible each week for making up to 500 cold calls, 25 sales appointments, and 10 presentations. He emphasizes that the differing job titles he held did not reflect a change in those duties but merely an increase in the monthly sales quota he was required to meet.

In addition to providing more detail about what his job entailed, Persin also maintains that, like him, other CareerBuilder employees were required as their principal job duty to sell advertisements for the company and achieve a quota based on their required level. Persin details the compensation plans for sales personnel and emphasizes that the compensation scheme was the same for all employees and only varied by the level of monthly quota employees needed to earn a bonus. He avers that over the past three years at least 300 other CareerBuilder employees shared his type of compensation plan.

The affidavits of Valerie D. Landis, another former CareerBuilder account manager, and Casey Guerra, a former CareerBuilder payroll administrator, present the final allegations that allow us to assume that others may share claims with Persin. Landis's job duties as junior account representative, account representative, and senior account representative were the same as Persin's. Her principal responsibility was to sell help-wanted advertisements for CareerBuilder's web site and affiliated newspaper, and she was required to make up to 500 cold calls and set a minimum number of

weekly appointments.  She reiterates Persin's statement that job duties remained the same regardless of job title; the only thing that changed when she earned a new title was her monthly quota.  Guerra echoes the same notion.  She states that CareerBuilder employed multiple levels of account managers whose titles differed based on experience, but whose jobs involved the same responsibilities.  The Landis and Persin affidavits supply the level of description that was lacking in Persin's earlier submission.[1]  Thus, we authorize Persin's notice of the lawsuit to putative collective action claimants under the preliminary, lenient phase of the applicable inquiry.

CareerBuilder argues that Persin has failed to identify the shared traits of potential plaintiffs with enough specificity to show that the putative claimants are similarly situated.  First, it contends that the precise job titles of "account manager" and "account representative" do not exist at CareerBuilder, so it does not know which

---

[1] To further the contention that he and other CareerBuilder employees were similarly situated, Persin also included a summary of CareerBuilder's unpaid overtime wages prepared by the U.S. Department of Labor.  The summary lists each CareerBuilder employee who was owed overtime wages for hours worked in excess of 40 from January 1, 2003, through November 15, 2004, and the amounts owed.  Persin's name is curiously missing from this list.  Its absence, though possibly simply because of Persin's decision to pursue this suit rather than a DOL-brokered settlement, casts at least some doubt as to whether he is apt to represent a group of potential claimants who were denied overtime compensation.  However, his current affidavit, coupled with those of Landis and Guerra, sets forth sufficient allegations for us to conceive that he and other CareerBuilder account managers and representatives may have been denied overtime pay.

employees are to be included. Second, CareerBuilder urges that it is improper to extend the scope of the collective action to account managers who did not receive overtime compensation after November 16, 2004, the date when CareerBuilder reclassified account managers as non-exempt under the FLSA and allegedly began paying them for overtime worked. However, these arguments do not counter Persin's allegations that he and the other account managers and representatives shared fundamental employment characteristics that could make them similarly situated; rather, they challenge the merits of his FLSA claim. Resolution of the instant motion does not require us to pass on Persin's ability to prevail. We need only decide whether others could be in the same boat, not that they definitively are. Consequently, CareerBuilder's arguments do not call for a different outcome.

Finally, CareerBuilder argues that we should deny notice because the FLSA claim will turn on evidence unique to individual employees. CareerBuilder notes that some district courts outside the Seventh Circuit have declined to authorize notice when FLSA claims depend on whether or not employees were properly classified under the FLSA, or whether or not employee time sheets were altered to delete overtime worked. Those courts reason that determining whether employees are similarly situated becomes too fact-intensive and time-consuming because the court must evaluate each

employee's specific job duties or time sheets.[2] Because we rely on the two-step method described, which provides for a detailed, post-discovery inquiry into the veracity of the allegations that all putative claimants are similarly situated, it is inappropriate to decline to authorize notice now based on the possibility of a fact-intensive inquiry at the second stage. See Hipp, 252 F.3d at 1218. Persin has alleged that he and other account managers and representatives shared some fundamental employment characteristics that extend beyond job titles. This is a sufficient basis to allow us to authorize notice of the lawsuit to putative collective action plaintiffs.

**B. Notice and Consent Form**

Because we authorize notice, we turn to Persin's additional request for approval of his proposed notice and consent form. CareerBuilder has raised several issues with respect to the specific content of the notice. It does not appear that the parties have worked to achieve a notice that is mutually agreeable. Resolving all of these disputes would require our significant participation, which comes dangerously close to placing our imprimatur upon the resulting contents, an impermissible result. See Woods, 686 F.2d at 581. Because one of the disputes centers around who could be considered to

---

[2] *See, e.g.,* Morisky v. Public Serv. Elec. & Gas Co., 111 F. Supp. 2d 493, 499 (D.N.J. 2000); Diaz v. Electronics Bout., No. 04-0840E, 2005 WL 2654270, at *5 (W.D.N.Y. Oct. 17, 2005); Reich v. Homier Distrib. Co., 362 F. Supp. 2d 1009, 1012 (N.D. Ind. 2005).

be situated similarly to Persin, we will not order CareerBuilder to provide any contact information until the parties have reached a working definition of a putative plaintiff. To resolve that issue, and the others surrounding the content of the notice, the parties are directed to meet face-to-face to discuss in good faith what will be included in the notice and consent forms. If, and only if, crystallized disputes remain after the parties have exhausted their considerable talents on achieving an accord will we step in.

## CONCLUSION

Based on the foregoing analysis, Persin's renewed motion to authorize notice to similarly situated persons pursuant to 29 U.S.C. § 216(b) is granted. All other pending motions are denied.

/s/ Charles P. Kocoras
_____
Charles P. Kocoras
Chief Judge
United States District Court

Dated:   November 23, 2005